OPINION of the Court, by
Judge Bibb.
The cir-quit court of Nelson established an entry in the name of George Weeden, and directed the manner of survey- . . 0 , . .. r * * r m t ¶ mg it, to the prejudice of the heirs of rmiip Cleland, *36 having the elder grant, by means of an entry made by-said Philip on the 5th of August, 1783: from this decree the defendants in the court below appealed to this court. The entry under which the appellee claims is as follows :
A doubtful e-^uity not to be aided by implication.
Cox vs. Smith cited, and vide Aféale vs. GaU hvay, Dec.Sth, 3809, and cafes there cited.
When witnef-fes fay a furvey was notorious in the fummer, the court will not prefume it was fo in J une, when Augaft will comport with the ftate-snent of the wit. aefs.
“ 1780, June 26th — Gen. George Weeden enters 2000 acres, upon military warrants, on the waters of the Beech fork of Salt river, on the head branches of the first large creek running in above Pleasant run on the south side, to run southwestwardly, to include the xuaters of the Rolling fork, and extending along the dividing ridge, and to join Evan Shelby’s 500 acre survey.”
The precision of this entry depends on the last call for Shelby’s survey. Without this, the entry can be surveyed in a great variety of figures, and the same figure placed in various positions ; yet, complying with the other expressions in the entry, what portion of the “head branches of the first large creek;” what “waters of the Rolling fork” shall be included'; how far along, or towards which end of the dividing ridge the survey shall extend, are questions which cannot be answered with any certainty until it is known where Shelby’s survey can be found. It is discernable, by plat No. 2, that a square, or an oblong, or other figure of a survey may be made, including some of the waters of the south fork of the “ Beech fork,” the head branches of Lick creek, (the first creek above Pleasant run) that it may be extended southwestwardly, to include some waters of the Rolling fork, and yet produce little or no interference with the appellants: moreover, that the survey might be extended along the dividing, ridge between the waters of the south fork of the Beech fork and Lick creek, or eastward along a continuation of the dividing ridge between the waters of the Rolling fork, Lick creek and Pleasant run, should he required by the position of Shelby’s survey, when ascertained. The question then presented is, could the holder of a warrant be requir&d to take notice, or be informed where Evan Shelby’s “ 500 acre survey” was, on the 26th of June, 1780? The appellee holds the affirmative, and has attempted to shew that the survey, represented on the plat as Evan Shelby’s 500 acres, was notorious at the date of Wee-den’s entry. Two witnesses swear that in the '■'■summer'” of 1780, it was a claim of considerable notoriety, *37 and “ after that year” that it was a claim of great notoriety. John Isaacks swears that he was well acquainted on Pleasant run, and the creek now called Lick creek, and the woods and head branches thereof, from the year 1777; and that as early as the beginning of the year 1782, he was informed of Shelby’s military survey, and from that time it was a claim of considerable notoriety. But when Shelby’s survey was made, none of the witnesses inform us, and no copy of it is exhibited ; so that whether it was made before or after Weeden’s entry, is left to conjecture ; and whether it was notorious before Weeden’s entry, is, of necessary consequence, left uncertain. These are chasms which cannot be filled up by implication, to the destruction of the elder legal title. We cannot presume that the survey for Shelby was executed previous to Weeden’s entry, when, if the fact is so, the appellee might have proved it by a bare exhibition of a copy of the survey ; if the surveyor had in truth post-dated his certificate of the survey, the complainants ought to have established the time when the survey was made, or at least that it was made before Weeden’s entry. When the witnesses say the survey was notorious in the “ summer,” we cannot supply the deficiency in the oath of the witness, by implication, and say it was in the month of June, when August would equally satisfy the expressions of the deponent; (accord. Craig vs. Baker, Hard. 288) and if he meant June, could have said so. It is not within the province of the court to aid a doubtful equity by implication ; and that to@ from the lesser evidence, where the complainant has kept back the higher. If Shelby’s survey was in fact made before Weeden’s entry, the neglect to prove it is attributable to the appellee ; but if, in the absence of higher evidence which the party might have produced, hut has failed to do, (either wilfully or negligently) the court should take upon themselves to infer that such was the fact; in that case the responsibility would be with the court: and how could they answer it to their own consciences, if hereafter it should appear, by a copy of Shelby’s survey, that it was subsequent to the entry in question ? Waving the question, whether the call in the entry for Shelby’s “ survei/’ could be construed to mean his entry, in case no survey had in fact been made for Shelby at the date of Weeden’s entry, *38 yet the complainants have failed to shew where Sheí-. by’s entry of 500 acres, of the 13th of April, 1780, could be properly surveyed. It appears that the survey, represented on the plat as Shelby’s, is not, in figure at least, conformable to the entry. The call for Evan Shelby’s survey therefore, upon the want of the evidence of its existence, as well as of its notoriety, previous to Weeden’s entry, cannot give any specialty or precise locality to that entry. Without Shelby’s survey to makQ it stationary, Weeden’s entry may be slided along the dividing ridge, assuming various positions in proportion to the waters included on the one side or the other of the ridge, as fancy may suggest. The principle decided in Cox vs. Smith fully applies, and Weeden’s entry must be declared illegal. All the calls, other than for Shelby’s survey, can have no effect (in the absence of that) but to lead into the neighborhood ; they cannot give any particular location. — ^-—Decree reversed..